UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PORSCHE BARRETT, *on behalf of herself and on behalf of all persons similarly situated*,<br><br>Plaintiff,<br>v.<br>ARMADILLO HOLDINGS, LLC,<br>Defendant. | NO. 1:22-CV-00882-DJC-DB<br><br>ORDER |

Pending before the Court is Plaintiff's Motion to Remand (ECF No. 13), arguing that Defendant has failed to establish the requisite amount in controversy required for jurisdiction under the Class Action Fairness Act. For the reasons set forth below, the Court finds that Defendant has failed to carry its burden of establishing the monetary threshold amount for jurisdiction and accordingly GRANTS the Motion to Remand.

**I.    Background**

Plaintiff is a former employee of Defendant Armadillo Holdings, LLC, doing Business as Texas Roadhouse. (Compl. (ECF No. 1, Ex. A) ¶¶ 1, 10.) Plaintiff brings claims on behalf of herself and other employees similarly situated alleging that Defendant failed to provide legally required meal and rest breaks; compensate her and other employees for those missed breaks, actual time worked, and off-the-clock

1  work; pay overtime and other wage premiums; reimburse her and other employees
2  for business expenses; and failed to issue accurate itemized wage statements, among
3  other violations.  (*Id.* ¶¶ 17, 18–47.)  She alleges these violations were systematic and
4  were carried out as a matter of company policy.  (*Id.* ¶ 17.)  Plaintiff brings claims
5  under the California Unfair Competition Law ("UCL"), California Business & Professions
6  Code §§ 17200, *et seq.*; and Cal. Lab. Code §§ 1194, 1197, 1197.1, 510, 1198, 226.7,
7  512, 226, 203, and 2802.

8       This action was originally filed in the Superior Court of California, Stanislaus
9  County on May 4, 2022.  (*Id.* at 1.)  Defendant was served on June 15, 2022, and
10 removed this action on July 5, 2022, claiming that this Court has jurisdiction under the
11 Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (Not. Removal (ECF No. 1) at
12 2.)  Plaintiff brings the instant Motion to Remand arguing that Defendant has failed to
13 substantiate its amount-in-controversy calculations to meet the monetary threshold for
14 CAFA jurisdiction.  (*See generally* Mot. to Remand. ("Mot.") (ECF No. 13).)  Defendant
15 opposes the Motion.  (Def.'s Opp'n ("Opp'n") (ECF No. 21).)

16      On January 26, 2024, the Court, on its own motion, requested supplemental
17 briefing from the Defendant to address the Court's concern that the calculations were
18 not limited to potential class members, and that Plaintiff potentially did not have
19 standing to pursue waiting time penalties.[1]  (Order (ECF No. 35).)  Defendants filed a
20 supplemental brief, (ECF No. 36), and Plaintiff filed a Sur-Reply, (ECF No. 37.)

21      This matter is now fully briefed and hereby submitted upon the record and
22 briefs of the Parties, without oral argument, pursuant to Local Rule 230(g).

23 **II.   Legal Standard**

24      "[A]ny civil action brought in a State court of which the district courts of the
25 United States have original jurisdiction, may be removed by the defendant, or the

---

[1] Defendant states that Plaintiff resigned her employment during the interim period which resolves the Court's general concerns about whether Plaintiff has standing to pursue this claim and thus whether the Court may consider Defendants' calculation of damages arising from this claim.

defendants, to the district court of the United States for the district . . . where such action is pending." 28 U.S.C. § 1441(a).  Under CAFA, the federal courts have original jurisdiction over class actions in which the parties are minimally diverse, the proposed class has at least one hundred members, and the aggregated amount-in-controversy exceeds $5 million dollars.  *See* 28 U.S.C. § 1332(d)(2), (5).

A defendant removing a class action filed in state court pursuant to CAFA need only plausibly allege in the notice of removal that the CAFA prerequisites are satisfied. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014).  If the plaintiff seeks to remand that action back to state court, however, the defendant bears the evidentiary burden of establishing federal jurisdiction under CAFA by a preponderance of the evidence.  *See id.* at 88 (quoting 28 U.S.C. § 1446(c)(2)(B)); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. NCUA*, 122 F.3d 1251, 1257 (9th Cir. 1997).  The Supreme Court has advised, however, "that no antiremoval presumption attends cases invoking CAFA" in part because the statute was enacted "to facilitate adjudication of certain class actions in federal court," and because "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee*, 574 U.S. at 89 (citations and quotations omitted); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

**III.   Discussion**

The Parties do not dispute that they are diverse or that the proposed class has at least one hundred members; the only issue before the Court is whether the amount-in-controversy exceeds $5 million.

When a plaintiff's complaint does not quantify damages, a defendant must show by a preponderance of the evidence that the amount-in-controversy exceeds the

jurisdictional threshold. *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020). A defendant is only required to show that it is more likely than not that the plaintiff's maximum recovery could reasonably be over $5 million. *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1185 (E.D. Cal. 2020). This burden is not daunting as "a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (citation omitted). Rather, in making this showing, a removing defendant "must be able to rely 'on a chain of reasoning that includes assumptions . . . .'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)); *see also id.* ("[A] CAFA defendant's amount-in-controversy assumptions in support of removal will always be just that: *assumptions*." (emphasis in original)). These assumptions must reflect more than "mere speculation and conjecture," *Ibarra*, 775 F.3d at 1197, and "need some reasonable ground underlying them," *id.* at 1199, but they "need not be proven," *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Assumptions may be reasonable if they are "founded on the allegations of the complaint." *Id.* at 925. Parties may also submit evidence outside the complaint, including affidavits, declarations, or other summary-judgment type evidence relevant to the amount-in-controversy. *Ibarra*, 775 F.3d at 1197.

The plaintiff can contest the amount-in-controversy by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (citations and quotations omitted). A factual attack, on the other hand, contests the truth of the allegations themselves. *Id.* When a plaintiff mounts a factual attack, they "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700.

4

Here, the Complaint does not specify an amount-in-controversy, thus Defendant has presented their own amount-in-controversy calculation, arguing that the operative amount is between **$11,354,950.45** and **$15,250,453.15**. (Not. Removal ¶ 49; Def.'s Supp. Brief (ECF No. 36) at 5.) Plaintiff mounts a factual attack on Defendant's calculation disputing whether Defendant has sufficiently supported the assumptions undergirding their amount-in-controversy calculation. (Mot. at 4; Reply (ECF No. 23) at 3–4.)

The primary evidence Defendant offers in support of removal are four declarations: one from Don Estepp, Chief Financial Officer of Armadillo Holdings, LLC (the "Estepp Declaration" (ECF No. 1, Ex. B)), and three from employees of Ultra Streak, Inc., which maintains the financial and human resources records for Armadillo Holdings, LLC (the "Belton Declaration" (ECF No. 21-1); the "O'Bold Declaration" (ECF No. 21-2) and the "Supp. O'Bold Declaration" (ECF No. 36-1)). Heather Belton, the Development and Compliance Manager at Ultra Streak, attests to her personal knowledge of and describes the systems used to collect, maintain and process payroll and personnel data. (Belton Decl. ¶¶ 3–6.) She collected and reviewed data to identify the number of terminated non-exempt employees between May 4, 2019 and April 4, 2022, and described how she calculated the average hourly rate of pay for those employees. (*Id.* ¶¶ 7–8.) Similarly, Kevin O'Bold, Vice President of Finance for Ultra Streak, Inc., attests to his personal knowledge of and describes the systems used to collect, maintain and process payroll and personnel data. (O'Bold Decl. ¶¶ 3–7.) He collected payroll data for non-exempt employees from May 4, 2018 to May 4, 2022 into a combined report, determined the number of unique employees, the average shift length, the average wage, the average weekly hours worked, and the number of shifts exceeding both 4 and 5 hours. (*Id.* ¶¶ 8–9.) Mr. O'Bold also collected and reviewed data concerning wage statements from May 4, 2021 to May 4, 2022, determined the number of unique non-exempt employees who worked at least one rest or meal-break eligible shift, and the number of wage statements issued that

contained a break eligible shift during the time period. (*Id.* ¶¶ 10-11; Supp. O'Bold Decl. ¶ 4-6.) Mr. Estepp also attests to having personal knowledge of Armadillo Holdings LLC's human resources records, and reviewing the same data and determining the same numbers described in the Belton and O'Bold Declarations. (Estepp Decl. ¶¶ 3-5.)

Based on this data Defendant calculated the amount-in-controversy as follows:

- Meal and rest break violations: Defendant used two potential violation rates, a violation rate of 40%, i.e., two meal and rest break violations per week, and a violation rate of 20%, i.e., one meal and one rest break violation per week, and multiplied the average hourly rate, $14.64[2] by the number of meal break eligible shifts, 487,754 (shifts over 5 hours) and the number of rest break eligible shifts, 576,591 (shifts over 4 hours), and then by the rate of violation. (Opp'n at 8-9.) Defendant calculated the value of the claims at the 20% violation rate to be **$3,116,402.16**, and the value of the claims at the 40% violation rate to be **$6,232,804.32**. (*Id.*)
- Wage statement penalties: Defendant assumed a violation rate of 100% for the wage statement violations. (*Id.* at 12.) Defendant determined that 1,847 non-exempt employees worked at least one break eligible shift, and that Defendant issued 21,544 total wage statements which included at least one break eligible shift during the relevant one-year period. (Def.'s Supp. Brief at 2.) It then calculated a $50 penalty for each initial wage statement violation for each of the 1,847 employees, and a $100 penalty for each of the remaining wage statements assuming each represented a subsequent violation. (*Id.* at 2.) In total, the Defendant calculated the value of this claim to be **$2,062,050.00**. (*Id.*)

////

---

[2] An employee who does not receive a meal or rest period to which she is entitled shall be paid one hour of pay at her regular rate of compensation as premium pay. *See* Cal. Lab. Code § 226.7(b).

1
2
3
4
5
6
7
8
9
- Waiting time penalties: Defendant assumed a violation rate of 100% for the waiting time penalties. (Opp'n at 14.) Defendant determined that 1,485 individuals terminated their employment with Defendant during the relevant time period, that the average hourly wage of these employees was $14.48, and that the employees worked an average of 6.05 hours per shift. (*Id.* at 14–15.) Defendant multiplied the average rate of pay by the average shift length, then multiplied that number by 30 days (the maximum days for the penalty to apply), and then multiplied by 1,485, the number of former non-exempt employees, to reach a valuation of **$3,902,758.20**. (*Id.*)

10
11
12
13
14
15
16
17
- Attorneys' fees: Defendant set attorneys' fees[3] at 25% of the damages calculated above, using either the 40% or 20% violation rate for the meal and rest period violations. (*Id.* at 18; Def.'s Supp. Brief at 5.) Using a 40% break violation rate, the total of the damages above would be equal to $12,197,612.5, making attorneys' fees equal to **$3,049,403.13**. Using the 20% break violation rate, the total of the damages above would be equal to $9,081,210.36, making attorneys' fees equal to **$2,270,302.59**. (Def.'s Supp. Brief at 5.)

In total, Defendant estimated the amount-in-controversy to be **$15,247,015.65** using the 40% violation rate for the meal and rest break violations, or **$11,351,512.95** using the 20% violation rate for the meal and rest break violations. (*Id.*)

Plaintiff challenges this amount by arguing that the violation rates utilized by Defendant to make these calculations are unsupported and unreasonable.[4]

---

[3] Attorney's fees may be included when calculating the amount in controversy supporting CAFA jurisdiction. *See Galt v. Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

[4] While Plaintiff initially challenged the sufficiency of the Estepp Declaration relied on in Defendant's Notice of Removal, Plaintiff acknowledges in her Reply that the Belton and O'Bold Declarations provide sufficient information about the source of the data and methodology, stating that "Plaintiff's Motion does not challenge the 'truth' of the data in Defendant's declarations per se, but rather the violation

7

## a. Reasonableness of Defendant's Calculations

Plaintiff alleges that Defendant unreasonably, and without support from the Complaint, assumes both a meal and rest break violation occurred either once (20%) or twice (40%) per week for each class member given that Plaintiff uses language limiting the frequency of the violations throughout the Complaint. Plaintiff similarly alleges the 100% violation rate for wage statement penalties and waiting time penalties is unsupported by the Complaint. Finally, Plaintiff alleges Defendant has presented no justification for assuming attorneys' fees amount to 25% of the damages award.

Generally, "the facts alleged in the complaint . . . are to be taken as true for purposes of calculating the amount in controversy." *Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x. 646, 648 (9th Cir. 2012); *see also Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) ("In measuring the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'") The Defendant may make certain assumptions underlying a damages calculation, but the "assumptions cannot be pulled from thin air [and] need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199. To assess assumptions underlying amount-in-controversy calculations, *Jauregui* dictates that:

> Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden. But often . . . the reason a defendant's assumption is rejected is because a different, better assumption is identified. Where that's the case, the district court should consider the claim under the better assumption—not just zero-out the claim.

28 F.4th at 996. Following this directive, the Court has analyzed Defendant's

---

rates as being unsupported by such declarations, or any competent evidence currently put forth by Defendant." (Reply at 9.)

8

assumptions to determine if any are unreasonable or baseless. *Id.* Where Plaintiff has presented no alternatives, the Court cannot consider any.

### i. Defendant's 20% Meal and Rest Break Rate is Reasonable

The Court concludes Defendant's calculation for the Meal and Rest Break claim is reasonable given a 20% violation rate. "[W]hen the plaintiff claims a 'pattern and practice' of violations" "courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable" as applied to meal breaks, and "a 10% to 30% violation rate to be reasonable" when applied to rest breaks. *Sanchez v. Abbott Lab'ys*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (collecting cases). Plaintiff here alleges the kind of pattern and practice which would ordinarily support an assumption that violations occurred multiple times per week: Plaintiff alleges that Defendant "intentionally, knowingly and systematically failed to provide legally compliant meal and rest periods" in accordance with Defendant's "strict corporate policy and practice." (Compl. ¶¶17–18.) *See, e.g.*, *Johnson v. Bamia 2 LLC*, No. 2:22-CV-00548-KJM-AC, 2022 WL 2901579, at *3 (E.D. Cal. July 22, 2022) (defendants' assumption that class members missed two meal breaks and two rest breaks per week was reasonable given that plaintiff alleged putative class members were "regularly denied" legally compliant breaks and were "often" or "routinely" unable to take compliant breaks due to defendants' "uniform policies/practices"). These, allegations, standing alone, would support Defendant's 40% violation rate.

However, Plaintiff also occasionally uses limiting language, alleging that Plaintiff experienced the meal and rest break violations only "[f]rom-time-to time." While the limitation of "from time-to-time" does not fully undermine Defendant's assumptions where the complaint otherwise alleges a pattern and practice,[5] courts have found a violation rate of no more than 20%, or once per week, is appropriate where there are

---

[5] This case is unlike, for example, *Rodriguez v. Circle K Stores Inc.,* where the court found a violation rate of even once per week unreasonable in light of the plaintiff's "from time-to-time" allegation. No. ED CV-19-0469-FMO-SP, 2019 WL 3026747, at *3 (C.D. Cal. July 11, 2019). There, the complaint did not contain the same pattern and practice allegations present in this case*.*

both pattern and practice allegations and this type of limiting language.  *See, e.g.*, *Cabrera v. South Valley Almond Co., LLC*, No. 1:21-CV-00748-AWI-JLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) ("[A]ssumptions of one hour of unpaid overtime per week and one hour of unpaid minimum wages per week are consistent with allegations that violations occurred 'at times' and 'on occasion,' particularly [when a] Complaint alleges that the Labor Code violations at issue [ ] are due to 'policies and/or practices' on the part of [d]efendants."); *Ramirez v. Cornerstone Bldg. Brands*, No. 2:21-CV-01017-MCE-JDP, 2022 WL 1556664, at *1 (E.D. Cal. May 17, 2022) (20% violation rate was reasonable where complaint contained allegations of violations occurring "often" or "from time to time" as well as violations resulting from "company-wide policies and procedures"); *Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-CV-01207-JAM-DB, 2019 WL 4316903, at *2 (E.D. Cal. Sept. 12, 2019) (applying 20% violation rate where there were allegations of a uniform policy and practice, and allegations that the violations occurred from time to time); *Serrieh v. Jill Acquisition LLC*, No. 2:23-CV-00292-DAD-AC, 2023 WL 8796717, at *3 (E.D. Cal. Dec. 20, 2023) (24% violation rate reasonable based on similar allegations).  Here, because Plaintiff tempers the policy and practice allegations by asserting that the violations occurred only from time to time, the Court follows suit in finding that Defendant's 20% violation rate is a reasonable assumption based on the allegations contained within the complaint.

Based on the 20% violation rate, the Court finds the value of the meal and rest break claims to be **$3,116,402.16**.

### ii.   Defendant's Wage Statement Penalty Rate is Unreasonable

Plaintiff's wage statement claims assert that Defendant failed to provide accurate wage statements because the statements did not reflect the actual amount of time worked or wages earned due to the foregoing meal and rest break violations.  Essentially, if an employee missed a meal or rest break, their corresponding wage statement would be incorrect.  Because this claim is derivative of the rest and meal

break claims, Defendant assumes that for every pay period where an employee had worked at least one rest- or meal-break eligible shift a violation would have occurred, and the corresponding wage statement would therefore be inaccurate. (Def.'s Supp. Brief at 2 & n. 2.) In other words, Defendant assumes that 100% of the wage statements issued to employees who worked at least one break eligible shift were inaccurate. (*Id.*)

Defendant's assumption is flawed is because it assumes that *every* break eligible shift resulted in violation, and therefore every wage statement in which an employee worked even *one* break eligible shift resulted in an inaccurate wage statement. (*Id.*; Supp. O'Bold Decl. at ¶¶ 4–6.) However, as discussed above, only a 20%, or one in five, violation rate is reasonable based on Plaintiff's allegations. If an employee worked only one rest or meal break eligible shift during the pay period, there is only a 20% chance that the wage statement was inaccurate. An employee would need to have worked at least five rest or meal break eligible shifts during a pay period in order to assume that that the employee suffered at least one violation during that pay period, and therefore to assume the wage statement was inaccurate. If Defendant had applied a 100% violation rate to only those wage statement in which employees worked at least five break eligible shifts, the assumption would be reasonable. Likewise, if Defendant applied a 20% violation rate to wage statements where the employee worked one break eligible shift, that too would be reasonable. But instead, Defendant applied a 100% violation rate where employees had worked only one break eligible shift.

In *Nunes v. Home Depot U.S.A.*, for example, the court found that a 100% wage statement violation rate was reasonable based on the assumption that at least one rest break violation occurred per week. 2019 WL 4316903 at *3. However, the defendant in that case provided facts to show that, on average, *each* class member was entitled to at least eight rest breaks and four meal breaks per week, "based on the actual length of shifts recorded by each class member." Def.'s Opp'n to Mot. to Remand

11

2:19-cv-01207-JAM-DB (E.D. Cal. Sept. 12, 2019), ECF No. 5, at 6–7.  Therefore, it was reasonable to assume that during every pay period every class member would have suffered at least one violation, and therefore every pay statement issued would have been inaccurate.  In contrast, in *Garibay v. Archstone Communities LLC*, the Central District of California, in a decision affirmed by the Ninth Circuit, found that Defendants had not provided enough evidence to reasonably assume that "every single member of the class will be able to recover penalties under § 226 for every single pay period," where it provided only evidence of  "the number of employees [and] the number of pay periods."  No. CV-12-10640-PA-VBK, 2013 WL 12157241, at *3 (C.D. Cal. Feb. 4, 2013), *aff'd,* 539 F. App'x 763 (9th Cir. 2013).  Similar to *Garibay*, Defendant here has not provided evidence to support an assumption that at least one *violation* occurred during every pay period for which the wage statements were issued.

In *Harris v. KM Industries, Inc.*, the Ninth Circuit found that where the defendant "rel[ied] on the factually unsupported and unreasonable assumption that the . . . Class members worked shifts long enough to entitle them to meal and rest periods," the defendant "failed to carry the burden of proving the statutory amount in controversy by a preponderance of the evidence."  980 F.3d 694, 702 (9th Cir. 2020).  The Ninth Circuit in *Jauregui* later stated that a district court would be "justified in simply rejecting that assumption" and assigning a $0 value to the claim where a defendant's assumption was unreasonable, and there was no alternative to assess.  28 F.4th at 996.  While the value of the claim is likely more than $0, no alternative has been presented, and the Court is mindful of the Ninth Circuit's instruction to not "offer[] entirely new or different assumptions," particularly where there are no facts on which to base this assumption.  *Id*.  Although the Court provided Defendant with the opportunity to submit additional briefing, Defendant failed to provide sufficient evidence to support its assumptions, or provide alternate assumptions.  The Court therefore assigns a $0 value to these claims.

////

### iii. Defendant's Waiting Time Penalty Calculation is Unreasonable

Defendants' waiting time penalty calculation is unreasonable for similar reasons as the above. Defendant determined that 1,485 individuals had their employment end during the relevant time period and applied a 100% violation rate based on an assumption that every one of these employees was not paid their full wages for the maximum of 30 days because of an underlying meal or rest break violation. (Opp'n at 14–15.) However, Defendant does not provide any evidence that each one of these terminated employees worked break eligible shifts during their employment – which could have resulted in underpayment of wages – or that they were not paid full wages at the end of their employment for any other reason. (*Id.* at 15.) The fact that the employees worked *on average* 6.05 hours per shift does not mean that each employee worked break eligible shifts.

In *Lowdermilk v. U.S. Bank National Ass'n*, the Ninth Circuit found the defendants calculations to be unreasonable where the defendant simply calculated the number of employees who had left the defendant's employment during the period and the average wage and number of hours worked. 479 F.3d 994, 1001 (9th Cir. 2007), *overruled on other grounds as recognized by Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). The defendant did not identify which employees could have suffered the harm claimed and therefore would have been potential class members, and there was not sufficient evidence to assume that *every* terminated employee did not receive full wages upon termination. *Id.*; *see also Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (finding calculations are unreasonable where the defendant's calculation assumed that all former employees had not been paid timely final wages). Defendants' failure to determine which of the terminated individuals are eligible class members similarly makes the Defendants' calculation unreasonable here.

As with the above, the Court assigns a $0 value to these claims.

13

### iv. Defendant's Attorneys' Fees Rate is Reasonable as Applied to the Other Reasonable Calculations

Attorneys' fees may also be included in the amount-in-controversy determination where the underlying statutes authorize an award of attorneys' fees. *Galt v. Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998); *see also Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018). However, "attorneys' fees shifting provisions in California Labor Code §§ 218.5 and 1194 do not apply to legal work relating to meal and rest period claims." *Fritsch*, 899 F.3d at 796 (citing *Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1255 (2012)). Because the meal and rest break violations are the only claims for which Defendant has met its burden of establishing the amount in controversy, it is not appropriate for the Court to assess the value of attorneys' fees on the labor code violations. However, as Defendant notes, Plaintiff also brings a derivative UCL claim and would be entitled to attorneys' fees on that claim.

The benchmark for class action attorneys' fees in the Ninth Circuit is 25%, with 20–30% within the usual range. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Defendant also provided a settlement assigning 33% attorneys' fees to Plaintiff's counsel in a similar class action which also alleged meal and rest break violations. (Not. Removal, Ex. M.) While Plaintiff argues that the lodestar method is the appropriate method for calculating attorney fees, the Ninth Circuit has determined that District Courts may either rely on the lodestar or a percentage, and that the "lodestar method is merely a cross-check on the reasonableness of a percentage figure." *Id.* at 1050 n.5. In fact, the lodestar method may inflate the amount in controversy because it "creates incentives for counsel to expend more hours than may be necessary on litigating a case." *Id*. Accordingly, the 25% attorney fee rate is reasonable.

Based on the value of the meal and rest break violations as determined above, **$3,116,402.16**, a 25% attorneys' fees would be equal to **$779,100.54**.

In sum, Defendant has provided by a preponderance of the evidence that Plaintiff's claims are worth **$3,895,502.70**.[6]  It may well be that Defendant could provide more reasonable estimates of the claims to which this Court has been forced to assign a value of $0 but they have not done so, despite being given an opportunity to respond to the Court's concerns.  (See Order (ECF No. 35); Def.'s Supp. Brief).  Defendant has failed to meet its burden of establishing the $5 million amount in controversy required for jurisdiction under CAFA.  Accordingly, Plaintiff's Motion to Remand is GRANTED.

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED Plaintiff's Motion to Remand (ECF No. 13) is GRANTED.

The Clerk of Court is directed to close this case and remand it to the Superior Court of California, Stanislaus County.

IT IS SO ORDERED.

Dated:  **March 15, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – Barrett22cv00882.MTR

---

[6] Although Plaintiff has asserted other violations than those discussed, neither party provided calculations regarding the value of those claims for the Court to consider.